# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 4, 2011

No. 08-20171

Lyle W. Cayce
Clerk

In The Matter Of: MICHAEL RAY MCCOMBS,

Debtor.

W STEVE SMITH, as Trustee for Michael McCombs; ALICIA ATKINSON
MCCOMBS,

Appellants,

v.

HD SMITH WHOLESALE DRUG CO,

Appellee.

Appeal from the United States Bankruptcy Court
for the Southern District of Texas

Before OWEN and HAYNES, Circuit Judges.[*]

PRISCILLA R. OWEN, Circuit Judge:

Bankruptcy Trustee W. Steve Smith (Trustee or Smith) and nondebtor
spouse Alicia Atkinson McCombs (Atkinson) appeal the bankruptcy court's grant
of summary judgment to H.D. Smith Wholesale Drug Company (H.D. Smith).
The Trustee and Atkinson argue that the bankruptcy court erred in holding that

---

[*] This case is being decided by quorum due to the death of Judge William L. Garwood
on July 14, 2011.  28 U.S.C. § 46(d).

No. 08-20171

H.D. Smith had an enforceable lien against the proceeds of the sale of the debtor's homestead property in excess of the $125,000 homestead exemption. We reverse and remand.

**I**

In 2004, Michael Ray McCombs (McCombs or Debtor) and his wife, Atkinson, purchased a home and an adjoining vacant lot in Katy, Texas. In March 2006, H.D. Smith obtained a judgment against McCombs for $538,016.46. In June, an abstract of judgment was issued, and H.D. Smith filed the abstract in the Harris County real property records in July.

In November, McCombs filed a voluntary Chapter 7 bankruptcy petition. Atkinson did not join the petition. McCombs listed the house and the vacant lot as community property and claimed a $125,000 homestead exemption. Prior to filing for bankruptcy, McCombs and Atkinson signed an agreement with one another providing that Atkinson would be entitled to the proceeds of the sale from the house. Atkinson and McCombs also found a buyer and executed a contract to sell the house prior to McCombs's petition for bankruptcy. Following McCombs's filing in November, the Trustee filed an emergency application to sell the house free and clear of all liens, claims, charges, encumbrances, and interests.

Atkinson told the Trustee that she would object to the sale unless there was an agreement as to the division of proceeds from the sale. Atkinson eventually agreed to allow the sale to go forward, but the parties stipulated that the funds would be placed in escrow until the bankruptcy court determined how the proceeds were to be distributed. The bankruptcy court granted the Trustee's motion to sell, and the sale of the home closed in December. The sale netted $398,849.03 in proceeds after payment of the mortgage and other expenses.

Following the sale, H.D. Smith filed an adversary proceeding against the Trustee and Atkinson. Atkinson and the Trustee filed answers and

2

No. 08-20171

counterclaims denying that H.D. Smith was entitled to the proceeds and seeking a determination that they were entitled to the sale proceeds.

The Trustee issued a check jointly payable to McCombs and Atkinson for $125,000, the amount of the homestead exemption McCombs claimed in his petition. The earlier stipulation between Atkinson and the Trustee provided that the Trustee would continue to hold the excess proceeds in escrow.

While the bankruptcy court was considering H.D. Smith's claim for the house proceeds, the Trustee filed an emergency motion to sell the unimproved lot. The bankruptcy court approved the sale, directing that all proceeds from the sale would become part of the excess proceeds already held in escrow. According to the Trustee, after the sale of the lot, the excess proceeds totaled $514,095.08.

The bankruptcy court granted H.D. Smith's motion for summary judgment. The court rejected Atkinson's claims that (1) the property had been partitioned or gifted, (2) her homestead rights trump the dollar limit in § 522(p), (3) she was entitled to compensation for the homestead right, and (4) failure to compensate her for the homestead right was an unconstitutional taking. The court held that H.D. Smith's judgment lien attached to the homestead and was perfected prior to McCombs's bankruptcy filing. The court also held that, because the Bankruptcy Code limited the homestead exemption, H.D. Smith obtained the right to enforce the lien after the homestead limit was applied. The court concluded that the right to enforce the lien did not violate the automatic stay or the prohibition against post-petition transfers.

The Trustee and Atkinson filed a notice of appeal to the district court. They also filed a joint certification for direct appeal to the Fifth Circuit, and the bankruptcy court certified the case for direct appeal. This court granted leave to appeal under 28 U.S.C. § 158(d).

Following the grant of leave to appeal, the Trustee and H.D. Smith filed a joint motion seeking a declaration that Atkinson has waived the issues she

No. 08-20171

presented in her appellate brief and requesting that we dismiss Atkinson's appeal. This court ordered the motion carried with the case and allowed the Trustee to file a brief in response to Atkinson's brief.

We have jurisdiction to review the bankruptcy court decision pursuant to 28 U.S.C. § 158(d).[1] When we directly review an order from a bankruptcy court, we review findings of fact for clear error and conclusions of law de novo.[2] The bankruptcy court's grant of summary judgment is a question of law we review de novo.[3]

## II

Texas state law provides for homestead protection with an acreage limit but no dollar limit.[4] The Bankruptcy Code allows a debtor to elect state exemptions; however, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) limits the state exemption in certain circumstances, including imposing a $125,000 limit on the exemption if the interest was acquired within 1,215 days of filing for bankruptcy.[5] It is not disputed that this provision of BAPCPA is applicable to McCombs's homestead.

Following McCombs's election of the $125,000 exemption, H.D. Smith sought to enforce the lien it filed prior to the bankruptcy filing. The bankruptcy court held that Texas homestead law did not prevent H.D. Smith from having an enforceable lien on the excess proceeds. The court held that the lien attached

---

[1] *See Drive Fin. Servs., L.P. v. Jordan*, 521 F.3d 343, 345 (5th Cir. 2008) (discussing 28 U.S.C. § 158(d)(2)).

[2] *Crosby v. Orthalliance New Image* (*In re OCA, Inc.*), 552 F.3d 413, 419 (5th Cir. 2008).

[3] *Id.*

[4] *See* Tex. Const. art. XVI, §§ 50-51.

[5] *See* 11 U.S.C. § 522(p)(1)(D); *Wallace v. Rogers* (*In re Rogers*), 513 F.3d 212, 217 (5th Cir. 2008). The Judicial Conference of the United States has since adjusted the exemption amount. *See* 11 U.S.C. § 104(b).

4

No. 08-20171

to the property before the bankruptcy proceedings and became enforceable upon application of the § 522(p) $125,000 homestead exemption.

"Creditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code."[6] "The 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.'"[7] "Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."[8]

Whether H.D. Smith has an interest in the specific excess proceeds is not directly governed by a federal interest; therefore, in determining H.D. Smith's rights in the excess proceeds, we look to Texas state law to characterize H.D. Smith's interest. Under Texas law, a lien is unenforceable against homestead property.[9] A judgment creditor may even be liable for slander of title for refusing

---

[6] *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000).

[7] *Id.* (citation omitted) (quoting *Butner v. United States*, 440 U.S. 48, 54, 57 (1979)); *see also Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 529 (5th Cir. 2004) ("The basic rule in bankruptcy is that 'state law governs the substance of claims.' This court has agreed, stating that the validity of a creditor's claims against the debtor at the time the bankruptcy petition is filed 'is to be determined by reference to state law.'" (quoting *Raleigh*, 530 U.S. at 20 and *Kellogg v. United States* (*In re W. Tex. Mktg. Co.*), 54 F.3d 1194, 1196 (5th Cir. 1995))); *Haber Oil Co. v. Swinehart* (*In re Haber Oil Co.*), 12 F.3d 426, 435 (5th Cir. 1994) ("[I]n the absence of controlling federal bankruptcy law, the substantive nature of the property rights held by a bankrupt and its creditors is defined by state law. The states can therefore have some effect on the operation of the federal bankruptcy system by exercising their power to define property rights." (citations omitted)).

[8] *Raleigh*, 530 U.S. at 20 (quoting *Butner*, 440 U.S. at 55).

[9] *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 660 (Tex. 1996) ("No mortgage, trust deed, or lien is ever valid on the homestead unless such lien secures payment of one of the[] . . . debts [specifically allowed by the Texas Constitution]."); *accord Davis v. Davis* (*In re*

No. 08-20171

to grant a partial release of its lien against homestead property under a contract to sell.[10]  "This does not mean, however, that a lien that is not valid and enforceable is completely without effect."[11]  "[T]he property or proceeds from the sale of property may be subject to seizure if the property ever ceases to be the debtor's homestead."[12]  However, we consider the status of H.D. Smith's lien at the time of the bankruptcy filing.  It is undisputed that McCombs's house and lot were homestead property entitled to protection under Texas law at the time McCombs filed bankruptcy.  Therefore, H.D. Smith lacked an enforceable lien at the time McCombs filed bankruptcy.

H.D. Smith urges the court to hold that the homestead cap in § 522(p) acts to convert the lien from its previously unenforceable status to an enforceable status.  This argument is unpersuasive because it does not consider the court's responsibility to look to state law to define property interests.  Section 522(p) is a federal provision that operates to limit the debtor's exemptible interest in the property; it does not speak to H.D. Smith's interest.  In the absence of controlling federal interests, the state characterization of the property prevails.  The non-exempt excess proceeds from the subsequent sale of the homestead property during the bankruptcy proceeding became non-exempt by virtue of federal law, not state law.  The bankruptcy laws that place a cap on the value of a homestead did not convert H.D. Smith's lien *on the homestead* from one that was

---

*Davis*), 170 F.3d 475, 482 n.9 (5th Cir. 1999) (en banc) ("The Texas Supreme Court has observed that a lien is never valid (in the sense of being enforceable) unless it secures payment for certain debts provided for in Tex. Const. Art. XVI, § 50." (citing *Crowder*, 919 S.W.2d at 660)).

[10] *Tarrant Bank v. Miller*, 833 S.W.2d 666, 667-68 (Tex. App.—Eastland 1992, writ denied).

[11] *Davis*, 170 F.3d at 482 n.9.

[12] *Id*. at 483; *see also id*. at 483 & n.10 (explaining how proceeds from the sale of homestead property may become subject to seizure by creditors).

unenforceable pre-petition to one that was enforceable *as to the homestead* post-petition.    The purpose of § 522(p) is to limit the amount of a homestead exemption, thereby increasing the size of the bankruptcy estate available to creditors.  We can discern no indication that the intent of § 522(p) was to make an otherwise unenforceable lien on homestead property enforceable *instanter*. H.D. Smith should be accorded the same priority as a creditor that it would have enjoyed had the bankruptcy not occurred.

Regardless of whether the lien attached prior to the bankruptcy proceedings, the Trustee took the property with the state-law character it had in the debtor's hands: a property with an unenforceable lien.  Therefore, we reverse the district court's grant of summary judgment.  Because we conclude that H.D. Smith's lien is unenforceable, we need not consider whether enforcing the lien would violate 11 U.S.C. § 362 or 11 U.S.C. § 549.  We stress that although we hold that H.D. Smith does not have a right specifically enforceable in the excess proceeds, we do not today rule whether H.D. Smith has an otherwise enforceable interest in the estate.

### III

Atkinson argues that she has an independent right to assert protection above that which McCombs claimed in the bankruptcy based on the Texas laws governing homesteads.  She argues that, if she cannot assert her homestead right, she is entitled to compensation for a loss of that right and that if no compensation is provided, there will have been an unconstitutional taking of her property.

As a preliminary matter, H.D. Smith and the Trustee filed a motion requesting the court to declare that Atkinson has waived her issues because they contend that Bankruptcy Rule of Procedure 8006 required her to include them in a statement of issues, and she failed to do so.  H.D. Smith and the Trustee argue that Atkinson designated certain issues in the statement of issues filed in

the district court pursuant to Rule 8006 and that she identifies different issues in her appellate brief before this court. Atkinson argues that the issues presented in her brief are encompassed in the statement of issues she filed and that the issues in her appellate brief were raised in the courts below. She contends, in the alternative, that because the appeal was certified for direct appeal, and because this court accepted the appeal, the district court appeal was the "appeal that never was," making the Rule 8006 designation in the district court irrelevant.

Bankruptcy Rule 8006 provides that, in an appeal to a district court or bankruptcy appellate panel, "the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented."[13] It is clear that under our case law, "even if an issue is argued in the bankruptcy court and ruled on by that court, it is not preserved for appeal under Bankruptcy Rule 8006 unless the appellant includes the issue in its statement of issues on appeal."[14] The issue is waived on subsequent appeal to the Fifth Circuit, even if the issue was argued before the district court.[15] Although it is clear under the law of this circuit that an issue that is not designated in the statement of issues in the district court is waived on appeal when the district court rules on the merits, we have not previously addressed whether the argument is waived when the bankruptcy court or parties certify, and we accept, a case for direct appeal pursuant to 28 U.S.C. § 158(d)(2).

As argued by the Trustee and H.D. Smith in their reply in support of their motion, in enacting 28 U.S.C. § 158(d)(2), Congress also enacted procedural rules

---

[13] FED. R. BANKR. P. 8006.

[14] *Zimmerman v. Jenkins* (*In re GGM, P.C.*), 165 F.3d 1026, 1032 (5th Cir. 1999).

[15] *See id.* at 1031-32 (holding that an issue was waived because it was not included in the statement of issues presented to the district court, even though the argument was presented before the district court).

to be applied to such appeals, including the following: "The Federal Rules of Appellate Procedure shall apply in the courts of appeals with respect to appeals authorized under section 158(d)(2)(A), to the extent relevant and as if such appeals were taken from final judgments, orders, or decrees of the district courts or bankruptcy appellate panels exercising appellate jurisdiction . . . ."[16] In turn, the applicable version of FED. R. APP. P. 6, which applies to appeals in bankruptcy cases from the district court or bankruptcy appellate panel to the court of appeals, provides that "[w]ithin 10 days after filing the notice of appeal, the appellant must file with the clerk possessing the record assembled in accordance with Bankruptcy Rule 8006—and serve on the appellee—a statement of the issues to be presented on appeal and a designation of the record to be certified and sent to the circuit clerk."[17] FED. R. APP. P. 6 "clearly refers to and parallels Bankruptcy Rule 8006's requirement" that an appellant file and serve a record designation and statement of the issues to be presented on appeal.[18] Thus, considering FED. R. APP. P. 6 in conjunction with the requirement that relevant rules of appellate procedure apply to direct appeals under § 158(d)(2) as if they were typical appeals from the district court or bankruptcy appellate panel, we conclude that, "[w]ithin 10 days after filing the notice of appeal, [Atkinson and the Trustee were required to] file with the clerk possessing the record assembled in accordance with Bankruptcy Rule 8006—and serve on the

---

[16] Act of Apr. 20, 2005, Pub. L. 109-8, Title XII, § 1233(b)(6), 119 Stat. 23, 204. Although the provisions contained in the rules were to be applied only until formal rules of procedure "relating to such provision and such appeals" were promulgated or amended, the rules of bankruptcy procedure promulgated in December 2008 regarding direct appeals do not relate to the particular provision quoted, which appears to remain applicable.

[17] FED. R. APP. P. 6(b)(2)(B)(i) (2007). The current version of the rule provides for a fourteen-day deadline, but is otherwise identical.

[18] *M.A. Baheth & Co. v. Schott* (*In re M.A. Baheth Constr. Co.*), 118 F.3d 1082, 1083 (5th Cir. 1997).

appellee—a statement of the issues to be presented on appeal and a designation of the record to be certified and sent to the circuit clerk."[19]

In this case, neither appellant filed a statement of issues or designation of the record after the notice of appeal to this court (consisting of our order granting leave to appeal) was filed. Presumably, the reason for this omission was that both parties had already filed such documents in anticipation of an appeal to the district court before the direct appeal was certified. Those documents were filed in the bankruptcy court and are also contained in the record on appeal. There appears to be no reason to require the designation and statement of issues to be filed a second time, nor is there any basis not to hold the appellants to the issues contained in their previously filed statements. In sum, the rules regarding preservation of issues on appeal in bankruptcy cases apply with equal force regardless of whether the appeal is from the bankruptcy court to the district court or bankruptcy appellate panel under 28 U.S.C. § 158(a), from the district court to the court of appeals under 28 U.S.C. § 158(d)(1), or from the bankruptcy court to the court of appeals upon proper certification and authorization under 28 U.S.C. § 158(d)(2). Accordingly, Atkinson's statement of issues must be considered to determine whether she properly preserved for appeal the issues and arguments contained in her brief.

In its appealed order granting summary judgment for H.D. Smith, the bankruptcy court held as follows: (1) Atkinson was not entitled to the excess proceeds pursuant to an agreement between her and the debtor because it was not a valid partition agreement converting the Property into her separate property, it could not be construed as a gift of the Property, and it instead constituted an unenforceable agreement incident to divorce; (2) as a nondebtor spouse, Atkinson could not maintain a separate homestead exemption that was

---

[19] FED. R. APP. P. 6(b)(2)(B)(i) (2007).

not subject to the limit in 11 U.S.C. § 522(p); (3) Atkinson's homestead exemption was not "akin to dower" such that she was entitled to a portion of the excess proceeds under § 363(j); (4) limiting Atkinson's homestead exemption was not an unconstitutional taking; and (5) the debtor's homestead was not exempt from the attachment of H.D. Smith's judgment lien, and because § 522(p) limits the homestead exemption in bankruptcy to $125,000, H.D. Smith's lien became enforceable with respect to any non-exempt interest exceeding that amount.

The Trustee's statement of issues, filed before Atkinson's, presented the following issues:

1. Whether the Bankruptcy Court erred in finding that H.D. Smith Wholesale Drug Co. ("H.D. Smith") has an enforceable lien on the Excess Proceeds and the Lot (both as defined in the Memorandum Opinion) and on any proceeds from the sale of the Lot.

2. Whether the Bankruptcy Court erred in finding that the right to enforce the lien, arising only at the instant of bankruptcy commencement, did not violate one or more provisions of 11 U.S.C. § 362 and as such was void or voidable.

3. Whether the Bankruptcy Court erred in finding that the right to enforce the lien, arising only at the instant of bankruptcy commencement, did not violate 11 U.S.C. § 549 and as such was void or voidable.

Atkinson's subsequently filed statement of issues mirrored the Trustee's.

In her appellate brief, on the other hand, Atkinson stated and argued the following issues: (1) the bankruptcy court erred when it held that 11 U.S.C. § 522(p) divested her of her homestead property rights; (2) Atkinson should have been compensated for her vested property interests under § 363(j); and (3) alternatively, taking Atkinson's property violated the Fifth Amendment.

In its summary judgment order, the bankruptcy court separately addressed Atkinson's and H.D. Smith's claims of entitlement to the proceeds. Because the court found Atkinson was not entitled to any of the proceeds, the

No. 08-20171

Trustee's statement of issues understandably focused only on the rulings relating to the enforceability of H.D. Smith's lien and not on Atkinson's claims. Atkinson argues that "it is impossible to reach the conclusion that H.D. Smith's lien is enforceable [the first issue] without concluding that Atkinson's interest evaporated upon the filing of the bankruptcy by her husband." This construes the first issue identified in her statement of the issues too broadly. There is no indication in that statement that Atkinson intended to argue on appeal the issues regarding her homestead rights, including whether § 522(p) applied to limit those rights, whether she should have been compensated under § 363(j), or whether her Fifth Amendment rights were violated.

H.D. Smith and the Trustee assert that, because Atkinson simply copied the Trustee's statement of issues, "even though the Bankruptcy Court ruled against her for reasons that were separate and apart from the reasons that it gave in its ruling against the Trustee," Atkinson gave "no indication that the Trustee and Atkinson would be adverse to one another in the course of appeal." We agree. The bankruptcy court's rulings regarding Atkinson were clearly stated in the summary judgment order, and she could easily have incorporated them into her statement of issues. The fact that Atkinson argued these issues in her summary judgment briefing is immaterial if she did not preserve them for appeal by including them in her statement of issues.[20]

Atkinson maintains that the issues were preserved by their inclusion in both the parties' and the court's certification for direct appeal. However, the certification for direct appeal may be analogized to a district court's certification for interlocutory appeal, which does not specify or restrict the scope of the court of appeals' review of the appealed order.[21] Moreover, the parties do not specify

---

[20] *Zimmerman v. Jenkins* (*In re GGM, P.C.*), 165 F.3d 1026, 1032 (5th Cir. 1999).

[21] *See Melder v. Allstate Corp.*, 404 F.3d 328, 331 (5th Cir. 2005).

No. 08-20171

the particular issues they seek to appeal in their certification, and the bankruptcy court's certification order, if anything, identifies the central issue warranting certification as "whether the Debtor's pre-petition homestead exemption prevented the perfection of H.D. Smith's judgment lien."

For these reasons, we do not consider the issues that Atkinson argues in her briefing in this court regarding homestead rights.

\* \* \*

We REVERSE the judgment of the bankruptcy court and REMAND for further proceedings.